UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRELL MICELI and OTIS FAVRE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-5442** |
| **DONJON MARINE, INC., XYZ INSURANCE COMPANY** | **SECTION "B"(3)** |

ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment (Rec. Doc. No. 30) to dismiss Plaintiffs' claims against Defendant Donjon. After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendant's Motion is **DENIED**.

*BACKGROUND*

Defendant Donjon Marine, Inc. ("Donjon") served as primary salvage contractor for the United States in the Gulf Coast, providing contractual salvage and removal services on behalf of the federal government. Pursuant to directives from the United States Coast Guard ("USCG") following Hurricane Katrina, Donjon removed over 400 vessels from the Gulf Coast region, which were designated by the USCG as posting an immediate threat to the navigable waters of the United States. The USCG was operating under the authority of the Robert T. Stafford Disaster Relief and Emergency Act ("Stafford Act").

Plaintiffs, Terrell A. Miceli and Otis Favre, owned the CORPORATE HEADQUARTERS II ("CORP HQ II"), a vessel which had been moored at a slip in Venice Marina, in Venice, Louisiana. The vessel broke free from its moorings during Hurricane Katrina and was left grounded near the Cypress Cove Marina. The USCG instructed Donjon to undertake removal of the vessel. A Salvage Plan was developed, which was approved and adopted by the USCG, and allegedly used in the removal of the COPR HQ II. The USCG

1

instructed Donjon to remove the vessel and place the CORP HQ II in the specified location within Venice Marina.  Days after the CORP HQ II was placed at the designated site, the USCG informed Donjon that the vessel had become partially submerged.  Donjon placed it on land adjacent to the Venice Marina.

Defendant contends that the Stafford Act discretionary function exception provides immunity to the United States.  Donjon claims that this immunity is extended to Donjon by the government contractor defense because Donjon's actions were undertaken pursuant to, and in conformance with, reasonably precise specifications from the government.  Defendant contends that the three-pronged test determining whether the government contractor is immune from liability confers immunity upon Defendant.  Defendant contends that liability cannot be imposed because (1) the USCG approved of the reasonably precise specifications in the Salvage Plan regarding the execution of the contract as the plan sets forth the equipment to be used in lifting the vessel, vessel inspection requirements, pollution prevention actions, the method of lifting and refloating the vessel, directions on relocation of the vessel, and the order in which operations were to be undertaken; (2) the performance conformed with the specifications; and (3) the contractor warned the U.S. about any dangers that were known to them, but not to the United States.  To that point, Defendant claims to be unaware of any dangers that were not known to the United States.

Plaintiffs contend that Defendant's actions are not covered by the government contractor immunity defense.  Donjon lifted the CORP HQ II on two separate occasions: on November 6, 2005 and on November 10, 2005.  Plaintiffs allege that the Salvage Plan was not reasonably precise and was not substantially reviewed by the United States Coast Guard.

Plaintiffs further allege that Defendant deviated from the Salvage Plan used during the November 6, 2005 mooring.  Plaintiffs also aver that Defendant knew of dangers that it did not disclose to the government.  With regard to the November 10, 2005 lift, Plaintiffs highlight that the Salvage Plan was not used and that Defendant acted negligently on the second occasion.  Plaintiffs also request an opportunity to conduct additional discovery to procure the testimony of the Donjon representatives in New Jersey who were involved in moving the CORP HQ II.

## *DISCUSSION*

### A. Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55 (1986).  A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party, the non-movant must produce specific facts to demonstrate that a genuine issue exists for trial.  *Webb v. Cardiothoracic Surgery Associates of North Texas*, 139 F.3d 532, 536 (5th Cir. 1998).  The non-movant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue.   *Id*.  The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S. Ct. at 2512.

Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993). Finally, the plaintiff must present an issue of material as to every one of the essential elements of each of his claims on which he bears the burden of proof at trial. *Celotex*, 477 U.S. at 322; *see also Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1444 (5th Cir. 1993).

### B. Government Contractor Immunity Under The Stafford Act Discretionary Function Exception

Federal agencies are authorized by the Stafford Act to remove debris or wreckage from publicly or privately owned land or waters. 42 U.S.C. § 5173. The "Nonliability of Federal Government" provision of the Stafford Act shields the federal government from liability stemming from the "exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this Act." 42 U.S.C. § 5148. Government decisions regarding when, where, and how to remove debris after a major disaster fall within the discretionary function exception of the Stafford Act. *United States v. City of New Orleans*, 2003 WL 22208578 (E.D.La. 2003); *Sunrise Village Mobile Home Park v. Phillips & Jordan, Inc.*, 960 F.Supp. 283 (S.D.Fl. 1996).

The governmental immunity provided by the Stafford Act's discretionary function exception may be extended to government contractors. In *Boyle v. United Technologies Corp.*, the Supreme Court held that government contractors may enjoy immunity for injury caused by design defects in equipment provided pursuant to specifications from the government. 487 U.S. 500 (1988). Liability cannot be imposed on the contractor when the three prong test established by *Boyle* is met: (1) the United States approved reasonably precise specifications regarding the

execution of the contract; (2) the performance conformed to the specifications; and (3) the contractor warned the United States about any dangers that were known to them, but not to the United States. *Boyle,* 487 U.S. at 512.

In the case at bar, Defendant claims that its actions satisfy all three-prongs of the *Boyle* test.  However, Plaintiff has highlighted material factual disputes regarding at least the first  two prongs of the *Boyle* test.  While Defendant did present the Salvage Plan to the government, material issues arise as to whether the Salvage Plan proved reasonably precise and the sufficiency of the government's approval of said plan.  A trier of fact must determine if the Salvage Plan can be considered reasonably precise  with regard to CORP HQ II because the Salvage Plan applies to a variety of nine different vessels, varying significantly in size, beam, weight, height, shape and composition.  In addition, Plaintiffs allege that the Salvage Plan was merely rubber stamped by the government.  When the government merely accepts, without substantive review, decisions of a government contractor, the first prong of the Boyle test cannot be satisfied.  *In re Katrina*, 2007 WL 4219351, *5 (E.D.La. 2007).  A "rubber stamp" does not constitute the necessary government approval. *Id*. Substantive review may involve the examination of drawings, criticism and extensive government testing- a "continuous back and forth" between the government and the contractor, and evaluation from time to time. *Kerstetter v. Pacific Scientific Co.*, 210 F.3d 431, 435 (5th Cir. 2000).  Plaintiffs highlight the absence of evidence of the aforementioned factors comprising substantive review, and attention should be paid to the government's approval of the Salvage Plan without modification within one day.  As such, material issues as to the first prong should be resolved by a trier of fact.

As support for the second prong of the *Boyle* test, Defendant presents the affidavit of its Vice President, John Witte, Jr., asserting that Defendant acted at all times in accordance with USCG instructions when it removed the CORP HQ II. However, Plaintiff directs the attention of the Court to the apparent inconsistencies between the affidavit and the Salvage Plan, which requires the trier of fact to determine whether the vessel should have been moved to the Empire or Venice Marina. Because the first two prongs of the *Boyle* test demonstrate the existence of genuine material issues, Defendant's motion for summary judgment fails.

### *CONCLUSION*

For the reasons stated above, **IT IS ORDERED** that Defendant's Motion for Summary Judgment is **DENIED**.

New Orleans, Louisiana, this 22nd day of April, 2008.

_____
UNITED STATES DISTRICT JUDGE